1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANTHONY SINGLETON,                          No. C 06-6234 SI (pr)

        Petitioner,          **ORDER DENYING HABEAS PETITION**

    v.

BEN CURRY, warden,

        Respondent.
_____/

## INTRODUCTION

Anthony Singleton, an inmate at the Correctional Training Facility in Soledad, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. This matter is now before the court for consideration of the merits of the petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

Anthony Singleton was convicted in Los Angeles County Superior Court of second degree murder and was sentenced in 1982 to 15 years to life in prison. His habeas petition does not challenge his conviction but instead challenges a June 15, 2005 decision of the Board of Parole Hearings ("BPH") that found him not suitable for parole. The 2005 hearing was Singleton's seventh subsequent parole hearing, and was conducted at a time when he was almost 23 years into his 15-to-life sentence.

The BPH identified the circumstances of the commitment offense, limited programming, disciplinary history, and inadequate parole plans as the reasons for the determination that Singleton was not suitable for parole and would pose an unreasonable risk of danger to society

or a threat to public safety if released from prison.  Resp. Exh. 2 (reporter's transcript of June 16, 2005 BPH hearing (hereinafter "RT")) at 55-56.  The specifics regarding the crime and the circumstances supporting the finding of unsuitability are described in the Discussion section later in this order.

Singleton sought relief in the California courts.  He filed a habeas petition in the Los Angeles County Superior Court that was denied in a reasoned decision.  Resp. Exh. 4.  The California Court of Appeal summarily denied Singleton's habeas petition.  Resp. Exh. 5.  The California Supreme Court summarily denied his petition for review.  Resp. Exhs. 6-7.

Singleton then filed his federal petition for a writ of habeas corpus.  The petition was filed in the U.S. District Court for the Central District of California and later was transferred to this district.  The court found cognizable two claims -- i.e., that there was not sufficient evidence to support the decision and that the decision breached his plea agreement – and ordered respondent to show cause why the writ should not issue.  Respondent filed a motion to dismiss the breach of plea agreement claim on the ground that it was time-barred.  The court granted the motion and dismissed that claim.  Respondent then filed an answer and Singleton filed a traverse.  The matter is now ready for a decision on the merits.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the challenged action concerns the execution of the sentence of a petitioner housed at a prison in Soledad in Monterey County, within this judicial district.  28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim

1    they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c).  The parties do not dispute that

2    state court remedies were exhausted for the claim asserted in the petition.

3

4                                   **STANDARD OF REVIEW**

5          This court may entertain a petition for writ of habeas corpus "in behalf of a person in

6    custody pursuant to the judgment of a State court only on the ground that he is in custody in

7    violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). The

8    petition may not be granted with respect to any claim that was adjudicated on the merits in state

9    court unless the state court's adjudication of the claim:   "(1) resulted in a decision that was

10   contrary to, or involved an unreasonable application of, clearly established Federal law, as

11   determined by the Supreme Court of the United States; or (2) resulted in a decision that was

12   based on an unreasonable determination of the facts in light of the evidence presented in the

13   State court proceeding."  28 U.S.C. § 2254(d); see Williams (Terry) v. Taylor, 529 U.S. 362,

14   409-13 (2000).   Section 2254(d) applies to a habeas petition from a state prisoner challenging

15   the denial of parole.  See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th

16   Cir. 2006).

17

18                                        **DISCUSSION**

19   A.    Due Process Requires That Some Evidence Support a Parole Denial

20         A California prisoner with a sentence of a term of years to life with the possibility of

21   parole has a protected liberty interest in release on parole and therefore a right to due process in

22   the parole suitability proceedings.  See Hayward v. Marshall, 512 F.3d 536, 542 (9th Cir. 2008);

23   Sass, 461 F.3d at 1127-28; Cal. Penal Code § 3041(b); see also Board of Pardons v. Allen, 482

24   U.S. 369 (1987); Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979).

25         A parole board's decision satisfies the requirements of due process if "some evidence"

26   supports the decision.   Sass, 461 F.3d at 1128-29 (adopting some evidence standard for

27   disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)).  "To

28   determine whether the some evidence standard is met 'does not require examination of the entire

record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the BPH.  <u>Sass</u>, 461 F.3d at 1128 (quoting <u>Superintendent v. Hill</u>, 472 U.S. at 455-56).  The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'"  <u>Id.</u> at 1129 (quoting <u>Superintendent v. Hill</u>, 472 U.S. at 457).[1]  The some evidence standard of <u>Superintendent v. Hill</u> is clearly established law in the parole context for purposes of § 2254(d).  <u>Sass</u>, 461 F.3d at 1129.

What little guidance has come from the Supreme Court suggests that judicial review should be extremely deferential to the original decision-maker in the parole context.  In addition to the very low evidentiary standard that <u>Superintendent v. Hill</u> imposes, other Supreme Court comments suggest that the judiciary should be quite mindful of the subjective and predictive nature of a parole board's decision.  See <u>Greenholtz</u>, 442 U.S. at 13.  "No ideal, error-free way to make parole-release decisions has been developed; the whole question has been and will continue to be the subject of experimentation involving analysis of psychological factors combined with fact evaluation guided by the practical experience of decisionmakers in predicting future behavior.  Our system of federalism encourages this state experimentation."  <u>Id.</u>; <u>see also</u> <u>id.</u> at 8.

Having determined that there is a due process right, and that some evidence is the evidentiary standard for judicial review, the next step is to look to state law because that sets the criteria to which the some evidence standard applies.  See <u>Hayward</u>, 512 F.3d at 542.  One must look to state law to answer the question, "'some evidence' of what?"

---

[1] Although <u>Sass</u> saw the requirement that the decision not be "otherwise arbitrary" as part of the "some evidence" standard, 461 F.3d at 1129, <u>Hayward</u> saw the "some evidence" requirement as separate from the requirement that the decision not be "otherwise arbitrary." <u>Hayward</u> quoted <u>Irons</u>, <u>infra</u>, for the proposition:  "We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary."'" <u>Hayward</u>, 512 F.3d at 542.

B.      State Law Standards For Parole For Murderers In California

California uses indeterminate sentences for most non-capital murders, with the term being life imprisonment and parole eligibility after a certain minimum number of years.  A first degree murder conviction yields a minimum term of 25 years to life and a second degree murder conviction yields a minimum term of 15 years to life imprisonment.  See In re Dannenberg, 34 Cal. 4th 1061, 1078 (Cal.), cert. denied, 546 U.S. 844 (2005); Cal. Penal Code § 190.  The upshot of California's parole scheme described below is that a release date normally must be set unless various factors exist, but the "unless" qualifier is substantial.

A BPH panel meets with an inmate one year before the prisoner's minimum eligible release date "and shall normally set a parole release date. . . . The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates." Cal. Penal Code § 3041(a).  Significantly, that statute also provides that the panel "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b).

One of the implementing regulations, 15 Cal. Code Regs. § 2401, provides:  "A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c).  A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d).  A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public."[2]  The regulation also

---

[2] The listed circumstances tending to show unsuitability for parole are: the nature of the commitment offense (i.e., whether the prisoner committed the offense in "an especially heinous, atrocious or cruel manner"), the prisoner has a previous record of violence, the prisoner has an unstable social history, the prisoner previously engaged in a sadistic sexual offense, the prisoner has a lengthy history of severe mental problems related to the offense, and negative institutional behavior.  15 Cal. Code Regs. § 2402(c).  The listed circumstances tending to show suitability

provides that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a). The panel may consider all relevant and reliable information available to it. 15 Cal. Code Regs. § 2402(b).

The federal habeas court's task is not to determine whether some evidence supports the reasons cited for the denial of parole, "but whether some evidence indicates a parolee's release unreasonably endangers public safety. Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers the public safety." Hayward, 512 F.3d at 543 (citation omitted).

A critical issue in parole denial cases concerns the parole authority's use of evidence about the murder that led to the conviction. Four Ninth Circuit cases provide guidance for applying the Superintendent v. Hill some evidence standard on this point: Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003), Sass, 461 F.3d 1123, Irons v. Carey, 505 F.3d 846 (2007), and, most recently, Hayward, 512 F.3d 536. Biggs explained that the value of the criminal offense fades over time as a predictor of parole suitability: "The Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered. . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs, 334 F.3d at 916-17. Biggs upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that "[o]ver time . . ., should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his

---

for parole are: the absence of a juvenile record, stable social history, signs of remorse, a stressful motivation for the crime, whether the prisoner suffered from battered woman's syndrome, lack of criminal history, the present age reduces the probability of recidivism, the prisoner has made realistic plans for release or developed marketable skills, and positive institutional behavior. 15 Cal. Code Regs. § 2402(d).

liberty interest in parole." <u>Id.</u> at 916.  Next came <u>Sass</u>, which criticized the <u>Biggs</u> statements as

improper speculation and beyond the scope of the dispute before the court.  <u>Sass</u>, 461 F.3d at

1129.  <u>Sass</u> determined that the parole board is not precluded from relying on unchanging factors

such as the circumstances of the commitment offense or the petitioner's pre-offense behavior in

determining parole suitability.  <u>See id.</u> (commitment offenses in combination with prior offenses

provided some evidence to support denial of parole at subsequent parole consideration hearing).

The next decision, <u>Irons</u>, aligned with <u>Biggs</u>, determining that due process was not violated by

the use of the commitment offense and pre-offense criminality to deny parole for a prisoner 16

years into his 17-to-life sentence, but emphasized that in all three cases (<u>Irons</u>, <u>Sass</u> and <u>Biggs</u>)

in which the court had "held that a parole board's decision to deem a prisoner unsuitable for

parole solely on the basis of his commitment offense comports with due process, the decision

was made before the inmate had served the minimum number of years required by his sentence."

<u>Irons</u>, 505 F.3d at 853.   Most recently, <u>Hayward</u> granted relief to a prisoner who had been in

custody 27 years on his 15-to-life sentence.  <u>Hayward</u> repeated the quoted passage from <u>Biggs</u>

and stated <u>Irons</u> had noted that "'in some cases, indefinite detention based solely on an inmate's

commitment offense, regardless of the extent of his rehabilitation, will at some point violate due

process, given the liberty interest in parole that flows from the relevant California statutes.'

<u>Irons</u>, 505 F.3d at 854.  'The commitment offense can negate suitability only if circumstances

of the crime reliably established by evidence in the record rationally indicate that the offender

will present an unreasonable public safety risk if released from prison.' <u>[In re] Scott</u>, 133

Cal.App.4th [573, 595 (Cal. Ct. App. 2005)]." <u>Hayward</u>, 512 F.3d at 545.[3]

---

[3]The California Supreme Court has determined that the facts of the crime can alone support a sentence longer than the statutory minimum even if everything else about the prisoner is laudable.  "While the Board must point to factors beyond the minimum elements of the crime for which the inmate was committed, it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release."  <u>Dannenberg</u>, 34 Cal. 4th at 1071; <u>see also In re Rosenkrantz</u>, 29 Cal. 4th 616, 682-83 (Cal. 2002), <u>cert. denied</u>, 538 U.S. 980 (2003) ("[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole" but might violate due process "where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense").  <u>Hayward</u> does not explain how <u>Dannenberg</u>'s more-than-the-minimum-elements rule fits into the picture, and simply ignores it.

The message of these cases is that the BPH can look at immutable events, such as the nature of the conviction offense and pre-conviction criminality, to predict that the prisoner is not currently suitable for parole even after the initial denial (<u>Sass</u>), but the weight to be attributed to those immutable events should decrease over time as a predictor of future dangerousness as the years pass and the prisoner demonstrates favorable behavior (<u>Biggs</u>, <u>Irons</u>, and <u>Hayward</u>). Also, the focus must be on whether the commitment offense demonstrates present dangerousness if it is relied upon to deny parole (<u>Hayward</u>). <u>Superintendent v. Hill</u>'s standard might be quite low, but it does require that the decision <u>not</u> be arbitrary, and reliance on only the facts of the crime might eventually make for an arbitrary decision.

C.    <u>Some Evidence Supports The BPH's Decision</u>

The BPH identified the circumstances of Singleton's commitment offense, limited programming, disciplinary history and inadequate parole plans as the reasons for the determination that Singleton was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison.

The crime was summarized in the probation officer's report and was described at the 2005 hearing:

> On June 23rd, 1982 at approximately 1000 hours Anthony Singleton . . . was arrested by the Hollywood Division Police for the murder of Reginald P. Taylor. Earlier that day, officers responded to 6848 Sunset Boulevard and observed the victim lying on the sidewalk with a gunshot wound in the upper chest. Per the probation officer's report, Singleton fired a total of five shots from a .38 caliber revolver at Taylor. The arresting officer's report indicates the victim begged Singleton not to shoot him and attempted to collect the $35 from people on the street in order to give Singleton the $35 he claimed was taken.

RT 10-11; Resp. Exh. 2.

Singleton's version of the events was that he had went to a hotel room with a woman and, when they arrived at the room, she asked for $45 for her services as a prostitute or for marijuana. When Singleton told her he only had $35, she said it was not enough and summoned a man who came to the room and robbed Singleton of his $35. Singleton left the room, went to his car, retrieved his gun, returned to the hotel and encountered the man and woman walking down the

1    front stairs. RT 14. Singleton demanded his money back and, when the man refused, Singleton

2    shot him three times. Singleton again demanded his money and, when he did not receive it, shot

3    the man two more times before fleeing.

4         The BPH next considered Singleton's pre-incarceration factors. Singleton had a minimal

5    criminal history. He had been arrested for a burglary when he was a juvenile, but that charge

6    that had been dismissed. He had been arrested for possession of a controlled substance about

7    a month before the murder, although the eventual disposition of that charge is not shown in the

8    record. See Resp. Exh. 2, Probation Officer's Report, p. 4. Singleton came from a stable family

9    background. He had dropped out of school in the 12th grade.

10        The BPH considered Singleton's behavioral history in custody. He had received eight

11   CDC-115 rules violation reports, although the most recent one was in 1987. RT 18. He also had

12   received four CDC-128 counseling memoranda for less serious rule violations. His most recent

13   CDC-128 was in 1992. He had been in the Grape Street Crips gang from 1976 through 1987,

14   when he stopped associated with it. RT 23, 43-44. He had vocational certificates in electronics

15   and dry cleaning. He had favorable work evaluations and had worked as a lieutenant's clerk and

16   as a porter. RT 20. His programming in prison included Narcotics Anonymous, although he

17   stated he never had a drug problem and was not learning the steps in the 12-step program. RT

18   22-23. He also had taken some classes in anger management and was on a waiting list for a

19   parenting class.

20        The most recent psychological evaluation opined that, in a community setting, his risk

21   factors were anticipated to be no higher than those of an average citizen. RT 28.

22        Singleton's parole plans were not well-developed. He intended to live with his mother

23   if released, although it was not clear that she had invited him to do so. He had several job offers,

24   but those offers were of dubious value. A BPH commissioner and the district attorney had tried

25   to contact the prospective employers and found that the listed telephone numbers were not for

26   the alleged employers and the alleged employers had no listings in the telephone directories. See

27   RT 35-37, 39, 41. Singleton eventually stated that the job offer documents had been obtained

28   by his family members and he did not know the particulars about the companies or the types of

1    jobs he might obtain if paroled. RT 40-41.

2

3         The BPH also considered the objections of the local sheriff's department where the

4    murder occurred and responses to questions posed by the district attorney of the county in which

5    the murder occurred.  The district attorney and Singleton's attorney gave final statements before

6    the BPH recessed to deliberate.

7         The BPH decided that Singleton was "not suitable for parole and would pose an

8    unreasonable risk of danger to society or a threat to public safety if released from prison at this

9    time."  RT 55.  The first reason articulated in support of that determination was that the

10   commitment offense had been carried out in an especially cruel and callous manner.  Among

11   other things, the BPH noted that the motive was very trivial, the shooting took place after

12   Singleton had been robbed and had gone to his car to get his weapon, the victim had begged for

13   his life and tried to collect $35 from strangers to give to Singleton to satisfy him before

14   Singleton shot him.  RT 55-56.  The BPH considered a circumstance and factors proper under

15   California law.  A circumstance tending to indicate unsuitability for parole is that "the prisoner

16   committed the offense in an especially heinous, atrocious or cruel manner."  15 Cal. Code Regs.

17   § 2402(c)(1).  The factors to be considered in determining whether that circumstance exists

18   included whether the offense done for a "very trivial" motive, § 2402(c)(1)(D), which this one

19   was. The robbery had concluded before Singleton retrieved his gun – making this shooting more

20   a revenge killing than the act of self-defense as Singleton apparently tried to suggest when he

21   gave his version at earlier interviews.  The facts of this murder were beyond the minimum

22   elements of a second degree murder.  See Dannenberg, 34 Cal. 4th at 1071; see also In re

23   Rosenkrantz, 29 Cal. 4th at  682-83.

24        In addition to the murder, the BPH identified other reasons to support the determination

25   that Singleton's release would present an unreasonable risk of danger to society.  The BPH relied

26   on his disciplinary record, inadequate programming, and inadequate parole plans.  RT 55-56.

27   Each of these factors had evidentiary support in the record.  His disciplinary record could be

28   considered as part of the overall picture of him and his performance in prison had not been

stellar: he received eight rule violation reports (although all were in the first five years of custody) and four counseling memoranda (although these too were at least a decade old).  The BPH's concern about Singleton's limited programming was confirmed when Singleton essentially conceded he was only doing as much as he thought necessary to get a parole date and had stopped pushing himself because he had done what was asked but had not received a parole date.  See RT 25-26, 29-30, 46.  He thus had passed up chances to learn skills to cope with life outside prison.   The transcript also provides support for the BPH's concern about Singleton's parole plans, as he had taken very little initiative and was relying on his family to look for jobs for him. The job offers the family had found may have been illusory.  In considering whether the parole candidate is suitable for parole, the BPH reasonably concluded that Singleton's limited programming to better himself and his passivity with respect to his post-incarceration life did not bode well for a successful parole.  See 15 Cal. Code Regs. § 2402(b) (all relevant, reliable information shall be considered).

The Los Angeles County Superior Court upheld the BPH's decision in a reasoned order. Resp. Exh. 4. Because that court's decision is the last reasoned decision, that is the decision to which § 2254(d) applies.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005), cert. denied, 547 U.S. 1138 (2006).  The state superior court correctly identified the "some evidence" standard as the applicable standard for judicial review, as evidenced by its citation to In re Rosenkrantz, 29 Cal. 4th 616 (Cal. 2002), which had cited and adopted the Superintendent v. Hill some evidence standard as the proper standard for judicial review of evidentiary sufficiency for parole denial cases.  See Rosenkrantz, 29 Cal. 4th at 665-67.  The court found that there was some evidence to support the BPH's decision.  That court's rejection of Singleton's due process claim was not contrary to or an unreasonable application of Superintendent v. Hill's some evidence standard.

1

**CONCLUSION**

2          For the foregoing reasons, the petition is denied.  The clerk shall close the file.

3          IT IS SO ORDERED.

4  DATED: 5/1/08

_____
5                                          SUSAN ILLSTON
                                   United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28